UNITED STATES DISTRICT COURT

DISTRICT OF HAWAII

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　　Plaintiff,<br><br>　vs.<br><br>NADINE KEHAUNANI RAMOS,<br><br>　　　　　Defendant. | CR. NO. 15-00210 LEK |

**ORDER DENYING DEFENDANT'S**
**EMERGENCY MOTION TO MODIFY SENTENCE**

　　　　Defendant Nadine Kehaunani Ramos ("Ramos") files the instant motion. She seeks sentence reduction and compassionate release pursuant 18 U.S.C. § 3582(c)(1)(A). She is currently in the custody of the Federal Bureau of Prisons ("BOP") at Nevada Southern Detention Center in Pahrump, Nevada ("Nevada Southern"), which is a "facility run by CoreCivic, a private company." [Def.'s Emergency Motion to Modify Sentence ("Motion"), filed 4/17/20 (dkt. no. 62), Decl. of Counsel ("Counsel Motion Decl.") at ¶¶ 4, 5.a.[1]] Plaintiff United States of America ("the Government") states that her request should be dismissed for failure to exhaust administrative procedures.

---

　　　　[1] Docket number 62 contains sealed portions. A redacted version of the Motion was publicly filed on April 21, 2020. [Dkt. no. 64.]

[Government's Response to Def.'s Emergency Motion to Modify Sentence ("Response"), filed 5/4/20 (dkt. no. 70), at 1.]

For the reasons stated below, Ramos's Motion is hereby denied.

## BACKGROUND

The facts of this matter arise out of the Information filed on March 19, 2015 against Ramos charging her with attempting to possess with the intent to distribute a mixture or substance containing a detectable amount of methamphetamine, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(C) and 846. [Dkt. no. 1.] The Government filed its notice on March 19, 2015 that Ramos had been previously charged in the criminal matter known as United States v. Ramos, CR 15-00100 LEK ("Cr. No. 15-00100").[2]  [Dkt. no. 3.]

Ramos waived her right to indictment and entered a guilty plea to the Information on April 3, 2015.  [Minutes, filed 4/3/15 (dkt. no. 8).]

On August 3, 2016, Ramos was sentenced to 87 months of imprisonment as to the one count of the Information, and a term

---

[2] A Criminal Complaint was filed in Cr. No. 15-00100 against Ramos on January 12, 2015 charging her with attempting to possess with the intent to distribute 500 grams or more of a mixture or substance containing a detectable amount of methamphetamine on January 9, 2015, in violation of 21 U.S.C. §§ 841(a)(1), and 841 (b)(1)(A).  [Cr. No. 15-00100, Criminal Complaint, filed 1/12/15 (dkt. no. 1).]

2

of supervised release of three years.  [Judgment in a Criminal Case, filed 8/4/16 (dkt. no. 59), at 2-4.]  She was ordered to surrender on October 12, 2016 to commence serving her sentence.  [Stipulated Motion and Order Granting Extension of Time to Surrender, filed 9/22/16 (dkt. no. 61), at 4.]  She is scheduled to be released on December 12, 2022.  [Response at 2.]  She is currently 41 years old.  [Counsel Motion Decl. at ¶ 4.]

Ramos seeks sentence reduction on the basis that she suffers from chronic asthma and hyperthyroidism, and takes medication for both conditions:  20 mgs of Methimazole daily; and an albuterol inhaler that she uses several times weekly to control her asthma.  [Id. at ¶ 5b.[3]]  Her attorney, on April 13, 2020, sent a letter to Nevada Southern's warden requesting compassionate release pursuant to 18 U.S.C. § 3582.  [Id. at ¶ 6, Exh. A (letter dated 4/13/20 to Warden, Nevada Southern Detention Center ("4/13 Letter")) at 1.]  To date, no response has been received.  [Counsel Motion Decl. at ¶ 6.]

The Government's opposition is that Ramos has failed to exhaust her administrative remedies and that the exhaustion provision is not only mandatory, but jurisdictional and cannot be waived.  No evidence however is presented addressing whether

---

[3] On April 30, 2020, May 4, 2020, and June 12, 2020, Ramos supplemented the record with documentation regarding her medical conditions.  [Dkt. nos. 68, 72, 76.]

Nevada Southern's warden responded to the 4/13 Letter requesting compassionate release. As to whether Ramos has presented "extraordinary and compelling reasons," and whether the factors under 18 U.S.C. § 3551(a) warrant reduction of her sentence, the Government is unable to comment because it has not been able to acquire information nor to verify and investigate Ramos' medical condition. [Response at 15.]

## DISCUSSION

Generally, courts have limited power to modify terms of imprisonment after a defendant has been sentenced. See generally 18 U.S.C. § 3582. As amended by the First Step Act, 18 U.S.C. § 3582(c)(1)(A)(i) authorizes an exception to that general rule and permits modification of a sentence:

> (c) Modification of an imposed term of imprisonment.--The court may not modify a term of imprisonment once it has been imposed except that--
>
> > (1) in any case--
> >
> > > (A) the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed

4

>> the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that--
>
>> (i) extraordinary and compelling reasons warrant such a reduction . . .
>
>> and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission[.]

Thus, Ramos is required to demonstrate both exhaustion of administrative remedies and that "extraordinary and compelling reasons" exist to warrant sentence reduction.

**I.     Exhaustion**

Section 3582(c)(1)(A) imposes "a statutory exhaustion requirement" that "must be 'strictly enforced.'" United States v. Monzon, 99cr157 (DLC), 2020 WL 550220, at *2 (S.D.N.Y. Feb. 4, 2020) (alteration omitted) (quoting Theodoropoulos v. I.N.S., 358 F.3d 162, 172 (2d Cir. 2004)).  Here, Ramos has exhausted – through her counsel, her request for compassionate release was mailed to the warden of her facility on April 13, 2020.  [Counsel Motion Decl., Exh. A (4/13 Letter) at 1.] Under the mailbox rule, the warden is presumed to have received it within three to four days or, in other words, by April 17, 2020:

> The mailbox rule provides that the proper and timely mailing of a document raises a

5

> rebuttable presumption that the document has been received by the addressee in the usual time. It is a settled feature of the federal common law. Hagner v. United States, 285 U.S. 427, 430, 52 S. Ct. 417, 76 L. Ed. 861 (1932); Rosenthal v. Walker, 111 U.S. 185, 193, 4 S. Ct. 382, 28 L. Ed. 395 (1884); Lewis v. United States, 144 F.3d 1220, 1222 (9th Cir. 1998). As a rebuttable presumption, it does not operate as a rule of construction, dictating that a requirement of receipt should be read as a requirement of timely mailing. Rather, it is a tool for determining, in the face of inconclusive evidence, whether or not receipt has actually been accomplished. . . .

Schikore v. BankAmerica Supplemental Ret. Plan, 269 F.3d 956, 961 (9th Cir. 2001). More than thirty days have elapsed since April 17, 2020. The Government fails to provide any evidence that the warden did not receive the 4/13 Letter or, if the warden did receive it, that the warden denied the request thereby implicating Ramos's obligation to exhaust her administrative remedies in appealing a denial. Because over thirty days have passed since the request is presumed to have been received on April 17, 2020, Ramos meets the statutory requirement, and this Court may reduce the term of imprisonment.[4]

---

[4] Ramos's counsel also sent a letter via certified mail to BOP's Director dated April 22, 2020 in which he requested Ramos's release. [Reply to Government's Response to Defendant's Emergency Motion to Modify Sentence, filed 5/18/20 (dkt. no. 73), Decl. of Counsel ("Counsel Reply Decl.") at ¶ 2, Exh. A (letter dated 4/22/20 to Michael Carvajal, Director, Federal Bureau of Prisons).] While the Court appreciates counsel's thoroughness and advocacy on behalf of his client, it does not consider this letter as a qualifying request as set forth in 18 U.S.C. § 3582(c)(1)(A) because the statute clearly states that the thirty days must have elapsed from "receipt of the request

Additionally, the exhaustion requirement may be waived:

> However, as courts in this Circuit have held, the requirement of completing the administrative process may be waived "if one of the recognized exceptions to exhaustion applies." United States v. Perez, No. 17-CR-513-3, 2020 WL 1546422, at *2 (S.D.N.Y. Apr. 1, 2020); see also United States v. Colvin, No. 19-CR-179, 2020 WL 1613943, at *2 (D. Conn. Apr. 2, 2020) ("[I]n light of the urgency of [d]efendant's request, the likelihood that she cannot exhaust her administrative appeals during her remaining eleven days of imprisonment, and the potential for serious health consequences, the [c]ourt waives the exhaustion requirement of Section 3582(c)(1)(A)."); United States v. Zukerman, No. 16-CR-194, 2020 WL 1659880, at *2 (S.D.N.Y. Apr. 3, 2020).

United States v. McCarthy, CRIM. CASE NO. 3:17-CR-0230 (JCH), 2020 WL 1698732, at *3 (D. Conn. Apr. 8, 2020) (alterations in McCarthy). The exhaustion requirement is not absolute, but there must be a justification for waiving it:

> "Even where exhaustion is seemingly mandated by statute . . . , the requirement is not absolute." Washington v. Barr, 925 F.3d 109, 118 (2d Cir. 2019). There are generally three bases for waiver of an exhaustion requirement. See Perez, 2020 WL 1546422, at *2 (discussing exceptions to statutory exhaustion in context of motion for compassionate release during COVID-19 pandemic).
>
> "First, exhaustion may be unnecessary where it would be futile, either because agency decisionmakers are biased or because the agency

---

by the warden of the defendant's facility." Director Carvajal is not the warden of Ramos's facility.

7

> has already determined the issue." Washington, 925 F.3d at 118. "[U]ndue delay, if it in fact results in catastrophic health consequences, could make exhaustion futile." Id. at 120. Second, "exhaustion may be unnecessary where the administrative process would be incapable of granting adequate relief," including situations where "the relief the agency might provide could, because of undue delay, become inadequate." Id. at 119-20. Third, "exhaustion may be unnecessary where pursuing agency review would subject plaintiffs to undue prejudice." Id. at 119.

Id. (alterations in McCarthy).

The Court finds that exhaustion would be futile under the current circumstances of the COVID-19 pandemic and BOP's failure to respond to Ramos' request for compassionate release.

First, the spread of COVID-19 in the United States - particularly in enclosed communities such as prisons and nursing homes - demonstrates that further delay may cause catastrophic health consequences, including death. See New York v. Sullivan, 906 F.2d 910, 918 (2d Cir. 1990) (holding that waiver was appropriate where "enforcement of the exhaustion requirement would cause the claimants irreparable injury" by risking "deteriorating health, and possibly even . . . death"). To be clear, the COVID-19 crisis is unique. It is not a matter of considering an individual prisoner's risk of getting sick and receiving less than adequate medical care, it is the consideration that, even with BOP's conscientiousness and care in mitigating the spread of COVID-19 in its facilities through

cleaning and social distancing, it has been demonstrated that COVID-19 infection is already within its walls. Indeed, BOP's own statistics demonstrate wide-spread COVID-19 infection - the current status of its positive COVID-19 cases, including deaths, is:

> The BOP has **132,519** federal inmates in BOP-managed institutions and **13,321** in community-based facilities.  The BOP staff complement is approximately **36,000**.  There are **1,349 federal inmates** and **163 BOP staff** who have confirmed positive test results for COVID-19 nationwide.  Currently, **4,975** inmates and **528** staff have recovered.  There have been **87** federal inmate deaths and **1** BOP staff member deaths attributed to COVID-19 disease.

Federal Bureau of Prisons, COVID-19 Cases, https://www.bop.gov/coronavirus (last visited June 23, 2020) (emphases in original).  BOP's website does not provide information about whether positive COVID-19 cases have occurred at Nevada Southern.  Ramos contends that the coronavirus currently exists inside the walls of where she resides. [Counsel Motion Decl. at ¶ 7; Counsel Reply Decl., Exh. B (statement by Ramos, dated 5/5/20).]

Second, the Court finds that the administrative process is incapable of granting adequate relief.  Undue delay exists.  BOP (though its agent, Nevada Southern) has failed to respond to Ramos's request for compassionate release.  Thus, the Court finds that Ramos is unduly prejudiced by such delay

9

tactics and concludes that, even if Ramos has not exhausted as outlined in the statute, requiring her to exhaust administrative remedies under the circumstances presented renders exhaustion of the BOP administrative process futile, inadequate, and unduly prejudicial. Waiver of the exhaustion requirement is justified.

Lastly, the Government contends that the exhaustion requirement cannot be waived by this Court. This argument is unavailing. Compelling and thoughtful analysis exists for this Court to conclude that section 3582's exhaustion provision is not a jurisdictional requirement for the court's authority to grant compassionate release but merely states the procedures that a defendant must follow before seeking compassionate release:

> Neither the language, the context, nor the history of section 3582 clearly states that its exhaustion provision imposes a jurisdictional requirement. The text of the statute does not style exhaustion as jurisdictional barrier. Compare Shaw v. Bank of Am. Corp., 946 F.3d 533, 541 (9th Cir. 2019) (deeming provision which read "no court shall have jurisdiction over" to be jurisdictional), with Payne v. Peninsula Sch. Dist., 653 F.3d 863, 867 (9th Cir. 2011), *overruled on other grounds by* Albino v. Baca, 747 F.3d 1162 (9th Cir. 2014) (deeming provision which stated administrative procedures "shall be exhausted" to be non-jurisdictional). Furthermore, the context and history of section 3582, discussed above, demonstrate the rule goes to the procedures that must be followed before seeking compassionate release, as opposed to the courts' authority to grant such relief. In particular, the First Step Act made less onerous the procedures that had to be followed to

>   seek compassionate release by adding an avenue by
>   which a defendant could directly petition a
>   court, but did not alter the sentencing court's
>   exclusive authority to grant compassionate
>   release.

United States v. Connell, Case No. 18-cr-00281-RS-1, 2020 WL 2315858, at *2 (N.D. Cal. May 8, 2020). The Government's position on the exhaustion requirement is also appallingly inconsistent with other districts where the Government explicitly conceded "'that § 3582(c)(1)(A)'s exhaustion requirement is not jurisdictional, but rather is a claims-processing rule that the Government can waive by failing to raise an exhaustion argument.'" Id. at *3 (quoting United States v. Gentille, No. 19-cr-00590, 2020 WL 1814158, at *3 (S.D.N.Y. Apr. 9, 2020)). The Government's regional conflict in the interpretation of § 3582(c) raises alarm at the disparity of treatment and arbitrariness in treating similarly-situated defendants. Id. ("'The government's interpretation of § 3582(c) should not change based on whether an inmate is incarcerated in New York or California.'" (quoting United States v. Fischman, No. 16-cr-00246, 2020 WL 2097615, at *3 (N.D. Cal. May 1, 2020))).

## II. Extraordinary and Compelling Reasons

A sentence reduction is only permitted where there are "extraordinary and compelling reasons," and if "such a reduction

is consistent with applicable policy statement issued by the Sentencing Commission." § 3582(c)(1)(A)(i).

> Congress never defined the term "extraordinary and compelling reasons," except to state that "[r]ehabilitation . . . alone" does not suffice. 18 U.S.C. § 944(t) [sic]. Rather, Congress directed the Sentencing Commission to define the term. The Commission did so prior to the passage of the First Step Act, which amended section 3852(c)(1)(A) to allow prisoners to directly petition courts for compassionate release and removed the BOP's exclusive 'gatekeeper' role. See United States v. Rodriguez, No. 2:03-cr-00271, 2020 WL 1627331, at *2 (E.D. Pa. Apr. 1, 2020).

McCarthy, 2020 WL 1698732, at *4 (some alterations in McCarthy).

The Sentencing Commission does indeed provide, in pertinent part, the requisite guidance:

> [T]he court may reduce a term of imprisonment (and may impose a term of supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment) if, after considering the factors set forth in 18 U.S.C. § 3553(a), to the extent . . . applicable, the court determines that–
>
> > (1)(A) extraordinary and compelling reasons warrant the reduction; . . .
> >
> > (2) the defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g); and
> >
> > (3) the reduction is consistent with this policy statement.

United States Sentencing Commission Guidelines Manual ("U.S.S.G.") § 1B1.13. The Commission defined "extraordinary

and compelling" with three specific qualifying reasons in the Application Notes to section 1B1.13. The one applicable here is:

> (A) Medical Condition of the Defendant.
>
>> (i) The defendant is suffering from a terminal illness (*i.e.*, a serious and advanced illness with an end of life trajectory). A specific prognosis of life expectancy . . . is not required. . . .
>>
>> (ii) The defendant is-
>>
>>> (I) suffering from a serious physical or medical condition . . .
>>
>> that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.

U.S.S.G. § 1B1.13, cmt. n.1.

Courts have found that an extraordinary and compelling reason exists under certain situations:

> The defendant's age and medical condition, taken in concert taken in concert with the COVID-19 public health crisis, constitute an extraordinary and compelling reason to reduce McCarthy's sentence. See United States v. Gonzalez, No. 18-CR-1536155, 2020 WL 1536155, at *3 [(E.D. Wash. Mar. 31, 2020)] (approving compassionate release where defendant "is in the most susceptible age category (over 60 years of age) and her COPD and emphysema make her particularly vulnerable"); United States v. Hernandez, No. 18-CR-834, 2020 WL 1684062, at *3 (S.D.N.Y. Apr. 2, 2020) (finding "extraordinary and compelling reasons" to reduce the defendant's sentence due to defendant's asthma and the "heightened medical risk presented to [the defendant] by the COVID-19

> pandemic"); Rodriguez, 2020 WL 1627331, at *2 (granting compassionate release because for a diabetic inmate, "nothing could be more extraordinary and compelling than this pandemic"); United States v. Campagna, No. 16-CR-78-01, 2020 WL 1489829, at *3 (S.D.N.Y. Mar. 27, 2020) ("Defendant's compromised immune system, taken in concert with the COVID-19 public health crisis, constitutes an extraordinary and compelling reason to modify to [sic] Defendant's sentence on the grounds that he is suffering from a serious medical condition that substantially diminishes his ability to provide self-care within the environment of the RCC."); Perez, 2020 WL 1546422, at *2 ("Perez meets th[e] requirement [of Application Note 1(D)] as well, because he has weeks left on his sentence, is in weakened health, and faces the threat of a potentially fatal virus.  The benefits of keeping him in prison for the remainder of his sentence are minimal, and the potential consequences of doing so are extraordinarily grave."); see also United States v. Perez, No. 19-CR-297 (PAE), 2020 WL 1329225, at *1 (S.D.N.Y. Mar. 19, 2020) (granting bail application, pursuant to section 3142(i), of 65-year-old defendant with COPD, in light of "unique confluence of serious health issues and other risk factors facing this defendant, . . . which place him at a substantially heightened risk of dangerous complications should [he] contract COVID-19").

McCarthy, 2020 WL 1698732, at *5 (some alterations in McCarthy).

Those at high risk for severe illness from COVID-19 are: people sixty-five years old or older; people living in a nursing home or long-term care facility; and people of all ages with underlying medical conditions (particularly if not well controlled), including chronic lung disease or moderate to severe asthma, serious heart conditions, diabetes, chronic kidney disease undergoing dialysis, liver disease, severe

14

obesity, or who are immunocompromised (including cancer treatment).  Centers for Disease Control and Prevention ("CDC"), Coronavirus Disease 2019, People Who Are At Higher Risk, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-at-higher-risk.html (last visited June 22, 2020).  Ramos does not meet these risk factors.

Although Ramos suffers from chronic asthma, she presents evidence that her asthma is under control with medication.  The Court cannot conclude that Ramos has demonstrated that she is higher at risk or particularly vulnerable to contracting COVID-19 and suffering from serious complications.  Thus, it does not appear that there exists an extraordinary and compelling reason for sentence reduction.  Anxiety and fear caused by being incarcerated while the COVID-19 infection is rampant in certain BOP facilities are most understandable, but do not clear the legal hurdles for sentence reduction.

Since the Court finds that extraordinary and compelling reasons are not present, it need not address the two other determinations for granting reduction of imprisonment.

## CONCLUSION

For the foregoing reasons, Ramos's Emergency Motion to Modify Sentence, filed April 17, 2020, is HEREBY DENIED.

IT IS SO ORDERED.

DATED AT HONOLULU, HAWAII, June 23, 2020.



/s/ Leslie E. Kobayashi
Leslie E. Kobayashi
United States District Judge

USA VS. NADINE KEHAUNANI RAMOS; CR 15-00210 LEK; ORDER DENYING DEFENDANT'S EMERGENCY MOTION TO MODIFY SENTENCE

16